UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-14092-CR-MOORE/LYNCH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LOREN HILL,

    Defendant.
_____/

FILED by _____ D.C.

FEB - 6 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON
## SUPERSEDING PETITION FOR VIOLATIONS OF SUPERVISED RELEASE

**THIS CAUSE** having come on to be heard for an evidentiary hearing on February 6, 2009, upon the Superseding Petition Alleging Violation of Supervised Release, and this Court having conducted a hearing and received evidence, recommends to the District Court as follows:

1. The Superseding Petition alleges the following violations:

| | |
|---|---|
| **Violation Number 1** | **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about January 10, 2009, in Brevard County, Florida, the defendant did commit battery, contrary to Florida Statute 784. |
| **Violation Number 2** | **Violation of Mandatory Condition**, by failing to refrain from violation of the law. On or about January 10, 2009, in Indian River County, Florida, the defendant did Operate a Motor Vehicle with a Suspended, Cancelled, Revoked Drivers License, in violation of Florida Statute 322.34(2), Case Number 2009-CT-000699A and Operate a Motor Vehicle with an Expired Registration (six months or less), in violation of Florida Statute 320.07(3)(A), Case Number 2009-TR-001092A. |

| | |
|---|---|
| **Violation Number 3** | **Violation of Standard Condition**, by leaving the judicial district without first securing permission of the probation officer.  On or about January 10, 2009, the defendant traveled to Brevard County, Florida, without securing the permission of the probation officer or the court, as evidenced by his arrest by Brevard County Sheriff's Office for aggravated battery. |
| **Violation Number 4** | **Violation of Mandatory Condition,** by failing to refrain from violation of the law.  On or about December 7, 2008, in Okeechobee County, Florida, the defendant did commit battery, contrary to Florida Statute 784.03(b) and disorderly conduct on a premises of an establishment, contrary to Florida Statute 509.143. |
| **Violation Number 5** | **Violation of Standard Condition**, by failing to follow the instructions of the probation officer. On December 5, 2008, the defendant failed to follow the instruction of Senior U.S. Probation Officer David Farinacci by removing his Electronic Monitoring equipment, as directed. |
| **Violation Number 6** | **Violation of Special Condition**, by failing to participate in the Home Detention Monitoring Program (EM).  On December 5, 2008, the defendant failed to participate in the EM by removing/disconnecting the necessary equipment which prevented his required monitoring. |

2.	This Court previously entered its Report and Recommendation dated January 28, 2009, after concluding an evidentiary hearing in respect to Violation Numbers 4, 5 and 6 as set forth in this Superseding Petition.  That hearing was held at a time when the original Petition only alleged the violations which are materially set forth in Violation Numbers 4, 5 and 6 of the Superseding Petition.  Therefore, it was unnecessary to receive any evidence or make any rulings in regards to Violation Numbers 4, 5 and 6 of the Superseding Petition since this Court has already recommended that the Defendant's supervised release be revoked as to those three violations.

3. At the outset of the evidentiary hearing on February 6, 2009, the Defendant admitted Violation Numbers 2 and 3 set forth in the Superseding Petition. The government amended the language of Violation Number 3 to exclude the words "as evidenced by his arrest by Brevard County Sheriff's Office for aggravated battery." Therefore, Violation Number 3, as amended by the government at the hearing, states that on or about January 10, 2009, the Defendant traveled to Brevard County, Florida without securing the permission of the Probation Officer or the Court. The Defendant admitted this violation.

4. Based upon this Court's inquiry of the Defendant, this Court is satisfied that the Defendant has knowingly and voluntarily admitted Violation Numbers 2 and 3 as amended and as set forth in the Superseding Petition. This Court then proceeded with an evidentiary hearing as to Violation Number 1 as requested by counsel for the Defendant.

5. This Court received testimony in respect to Violation Number 1. The first witness called by the government was Deputy Deavers of the Brevard County Sheriff's Office. Deputy Deavers was on routine patrol in Brevard County on or about January 10, 2009. He received a call to respond to the Holmes Medical Center in Brevard County to speak with an individual who was an alleged victim of a crime.

6. Upon arriving at the hospital, Deputy Deavers met with an individual named Mr. Washington, who was allegedly battered by this Defendant. Mr. Washington appeared to have a two inch cut above his left eye. The physicians attending Mr. Washington said that the victim could not be released at that time and Deputy Deavers was not able to get any substantive facts from Mr. Washington due to his injuries. The attending physician informed Deputy Deavers that Mr. Washington had a cracked orbital socket in addition to the two inch cut above his left eye and that he had blood on his brain.

7.  Approximately three days later, Deputy Deavers returned to the hospital where Mr. Washington was still being treated. Mr. Washington told Deputy Deavers that he was at a party with other people drinking beer. He stated that a person, later identified as being this Defendant, began chasing a friend of Mr. Washington's. Mr. Washington then tripped the Defendant who was chasing this other individual. The Defendant then purportedly got up, took a beer bottle and struck Mr. Washington. Mr. Washington's injuries resulted from that incident.

8.  Deputy Deavers also interviewed an individual named Aston Hill who is the Defendant's nephew. Aston Hill said that he and other individuals were drinking beer and the Defendant "got rude" with some girls who were there. The Defendant was asked to leave. The Defendant started to leave and walked towards his car when someone, later identified as a Mr. Kirby, threw a beer bottle at the Defendant or the Defendant's car. The Defendant then ran after that person. Mr. Washington then tripped the Defendant. The Defendant got up and struck Mr. Washington with a beer bottle. The Defendant then left the scene.

9.  Another witness interviewed by Deputy Deavers was Mr. Henke. He related essentially the same story that Aston Hill did.

10. Another witness interviewed by Deputy Deavers was a Mr. Evans. He related essentially the same store as Aston Hill. Mr. Evans also added that when he and other individuals attempted to initially escort the Defendant to the Defendant's vehicle, the Defendant was struggling with Mr. Evans and ended up biting Mr. Evans on his chest. It was at this time that someone threw a beer bottle and the entire incident escalated.

11. Deputy Deavers tried to locate the Defendant. The Defendant's sister told Deputy Deavers that the Defendant had been arrested subsequent to this incident by the

4

Indian River County Sheriff's Office for driving with a suspended license. Therefore, Deputy Deavers obtained an arrest warrant from the Brevard County Circuit Court. The Defendant was later arrested in St. Lucie County on the Brevard County warrant.

12. According to Deputy Deavers, the victim, Mr. Washington, is 19 years old. The witness Aston Hill is in his late teens. Mr. Henke is also in his teens as is Mr. Evans. Apparently none of these individuals were of legal age to be drinking beer or any other alcoholic beverage.

13. This incident took place at approximately 4:30 a.m. Deputy Deavers arrived at the scene sometime shortly before or after 6:00 a.m. According to Deputy Deavers, all of the folks involved appeared to have been drinking alcohol most of the evening.

14. Deputy Deavers testified that none of the witnesses indicated that the Defendant was prevented from leaving the scene after someone had thrown a beer bottle at him or his vehicle. It was the Defendant who made the decision to re-engage and chase whoever he believed had thrown the beer bottle at him.

---

15. The next witness called by the government was Frank Smith, the Defendant's United States Probation Officer. Subsequent to speaking with the Defendant concerning his previous violation of removing his electronic monitoring equipment improperly, the Defendant failed to advise Mr. Smith that he had a fight in Brevard County. The Defendant never told Mr. Smith that the Defendant had been attacked by anyone in Brevard County. The first that Mr. Smith found out about this incident was when the Defendant was arrested here on the warrant issued out of Brevard County.

16. The Defendant called no witnesses and presented no evidence at the hearing. However, counsel for the Defendant did argue that the Defendant had a lawful right under Florida law to respond with "like force" after someone threw a beer bottle at him or his car.

17. While counsel for the Defendant did not cite a specific statute, it appears as though Florida Statute 776.012 controls use of force in defense of a person. That statute states that a person is justified in using force, except deadly force, against another when and to the extent that the person reasonably believes that such conduct is necessary to defend himself or herself or against the others' imminent use of unlawful force. The remaining provisions of that statute deal with deadly force which this Court does not believe is relevant nor appropriate to these facts.

18. Florida Statute 776.013(3) states that a person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has a right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes that it is necessary to do so to prevent death or great bodily harm to himself or herself or another or to prevent the commission of a forcible felony.

19. As stated by this Court on the record, this Court does not believe that this statute authorized the Defendant to chase after another one of the "drunks" in this altercation and then hit someone in the head with a bottle. As stated by this Court on the record, this is not considered "like force." This Court would consider it being use of a "like object" since somebody threw a beer bottle over at the Defendant or his car and the Defendant ended up using a beer bottle to hit Mr. Washington in the head.

20. This Court does not see this as a self-defense issue since obviously the Defendant was near his car and away from the area from which the bottle was thrown. The Defendant may very well have had the legal right to stand his ground by his car and not leave if he chose to do so. However, nothing that this Court reads in the statute nor the most recent case interpreting that statute, would appear to give the Defendant the right to "pursue" the bottle thrower and end up striking another person in the head with a beer bottle after being tripped. See Bartlett v. State, 993 So.2d 157 (1 DCA 2008).

21. This Court finds that the Defendant did commit a technical violation of the Florida laws relating to battery by striking Mr. Washington in the head with a beer bottle. Tripping the Defendant did not justify the use of force by the Defendant in striking Mr. Washington in the head.

22. This Court also stated on the record that it appears as though many of the individuals involved in this situation were underage minors who were not legally able to buy or consume beer or any other alcoholic beverage. From the evidence, it appears as though all of the individuals were out there for quite some time consuming beer and arguing. As stated by this Court on the record, the law enforcement authorities could very well have charged all of the individuals out there with Affray under Florida Statute 870.01, et seq. D.L.B. v. State, 707 So.2d 844 (2 DCA 1998) and D.J. v. State, 651 So.2d 1255 (1 DCA 1995).

23. Frankly, the evidence appears to suggest that everyone out there was drinking and/or drunk and arguing with each other. However, this cannot justify the use of what this Court finds to be excessive force by the Defendant in hitting Mr. Washington in the head with a beer bottle after someone threw a beer bottle over towards him or his car. This is not "like kind" use of force in this Court's view. While everyone probably should

have been arrested, that is not what is before the Court at this time. What is before the Court is whether or not the government has sustained its burden in establishing that the Defendant did commit a battery. The government has sustained the burden in that regard.

**ACCORDINGLY,** this Court recommends to the District Court that the Defendant be found to have violated his supervised release in respect to Violation Numbers 1, 2 and 3 of the Superseding Petition and that this matter be set for a sentencing hearing at the District Court's earliest convenience for final disposition.

The parties shall have ten (10) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable K. Michael Moore, United States District Judge assigned to this case.

**DONE AND SUBMITTED** this 6th day of February, 2009, at Ft. Pierce, Northern Division of the Southern District of Florida.

FRANK J. LYNCH, JR.
UNITED STATES MAGISTRATE JUDGE

cc:
Hon. K. Michael Moore
AUSA Carmen Lineberger
AFPD Fletcher Peacock
U.S. Probation Office

8